**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                  **v.**       **11-CR-268S(Sr)**

**PRAVIN V. MEHTA,**

        **Defendant.**

─────────────────────────────────────

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #17.

## PRELIMINARY STATEMENT

The defendant, Pravin V. Mehta ("Mehta"), is charged in a twenty-eight count Indictment (Dkt. #16) with the distribution and dispensing of various controlled substances and the conspiracy to do so. Defendant Mehta also faces a forfeiture count. What follows is this Court's Decision and Order with respect to Mehta's non-dispositive motions directed to the Indictment. Dkt. #41. This Court's Report, Recommendation and Order with respect to defendant Mehta's dispositive motions will be filed separately.

## <u>FACTS</u>

On January 27, 2011, defendant Mehta was arrested and charged in a Criminal Complaint with the knowing, intentional and unlawful distribution of schedule II, III and IV controlled substances by the issuance of prescriptions in a manner inconsistent with the usual course of medical practice and for other than a legitimate medical purpose for the period March 2010 through September 2010. Dkt. #1. As detailed in the Affidavit of United States Department of Justice, Drug Enforcement Administration, Buffalo Resident Office ("DEA-BRO") Diversion Investigator Joseph Cowell submitted in support of the Criminal Complaint, the DEA-BRO initiated and coordinated a multi-agency joint investigation into Mehta and his medical practice. Dkt. #1, ¶ 7. The DEA-BRO had received complaints of excessive and unlawful prescribing of controlled substances by Mehta from area law enforcement agencies, including the New York State Police, Niagara County Sheriff Department-Drug Task Force, Niagara Falls Police Department, and the New York State Bureau of Narcotic Enforcement. *Id.* at ¶ 8. In his Affidavit, Diversion Investigator Cowell further stated:

> Historically, the BRO has received similar source and intelligence information concerning MEHTA's over-prescribing of controlled substance "painkillers" from medical professionals, pharmacists, and private individuals within Niagara and Erie Counties. Confidential sources and cooperating defendants have named MEHTA as a source of controlled substances where by [sic] a person can get any drug they want prescribed with little or no medical examinations, and that MEHTA is referred [sic] as "Dr. Feel Good."

*Id.* Thereafter, Investigator Cowell's Affidavit detailed the over year long investigation which included the review of data, consensually recorded office visits and the analysis

of a medical expert retained to provide an opinion concerning whether the prescription of controlled substances by Mehta during the consensually recorded office visits was consistent with the usual course of medical practice and whether the prescribing was for a legitimate medical purpose.

On or about August 31, 2011, a Federal Grand Jury returned the instant twenty-eight count Indictment (Dkt. #16). On September 6, 2012, defendant Mehta filed the instant motion seeking the following: the exclusion of statements by non-testifying co-conspirators, a bill of particulars, the revelation of the identity of informants, discovery pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure, release of *Brady* materials, the disclosure of evidence pursuant to Rules 404(b), 608 and 609 of the Federal Rules of Evidence, the disclosure of witness statements, the preservation of rough notes, the disclosure of Grand Jury transcripts, motion to *voir dire* government experts outside of the presence of the jury, and an audibility hearing. Dkt. #41. The government filed a response to defendant Mehta's motion (Dkt. #45) on October 3, 2012, and thereafter, filed an Amended Response (Dkt. #53) (all referenced herein will be to the Amended Response) on November 15, 2012. This Court heard oral argument on January 8, 2013. Dkt. #62.

## DISCUSSION AND ANALYSIS

**Exclusion of Statements of Non-Testifying Co-Conspirators**

Pursuant to *Bruton v. United States*, 391 U.S. 123 (1968) and the Sixth

Amendment to the United States Constitution, the defendant requests that the Court preclude the admission into evidence of all post-arrest statements by non-testifying co-conspirators/co-defendants which may implicate the defendant in any way. Dkt. #41, pp.7-8. In support of this request, the defendant claims that, "because he has not received discovery of any post-arrest statements by co-conspirators or co-defendants, Dr. Mehta cannot know whether the government will seek to use such evidence against him, or even if such statements exist." *Id*. at p.8.

In its response, the government states,

While the government has obtained statements from a number of co-conspirators pursuant to cooperation agreements, the government would not seek admission of those statements without having the witness testify at trial.

Dkt. #53, p.10.

Because Rule 801(d)(2)(E) of the Federal Rules of Evidence does not contain a required pretrial notice, there is no requirement on the part of the government to make any such disclosure of this type of evidence at this time. As a result, defendant's request in this regard is denied. Any request to exclude such statements at the trial, is a matter left to the discretion of the trial judge.

**Bill of Particulars**

In ninety-four separately lettered requests, the defendant seeks information concerning the charges in the Indictment. Dkt. #41, pp.9-23. In support of

his requests, defendant Mehta states, "[w]ithout such specification as to the nature of

his allegedly improper conduct, Dr. Mehta is without ability to prepare for trial and the

danger of surprise at trial is greatly increased." *Id*. at p.9. In its response, the

government states,

> [e]ssentially, the defendant requests the exact time, date
> and manner in which the defendant committed the crimes
> alleged in each Count of the Indictment, the name of all co-
> conspirators, and specification as to how the government will
> prove each allegation in the Indictment. In addition, the
> defendant seeks the names of any and all witnesses to
> those acts as well as the statements those witnesses may
> have given.
>
> The Indictment in this case is very detailed and the
> defendant has been provided with significant discovery
> materials. Thus, the government refuses the requests for
> further particularization . . .

Dkt. #53, pp.10-11.

> In addition, the government states,
>
> In the instant case, counsel fails to articulate any facts upon
> which the Court could conclude that the defendant had met
> his burden of establishing need, especially in light of the
> detailed indictment, information contained in the search
> warrant application and Criminal Complaint, and the
> voluntary discovery provided to date. Here, the documents
> provided by the government not only illustrates [sic] the
> words and actions of the defendant and others acting at his
> direction, but also provides [sic] the dates relevant to each of
> these acts. Moreover, each substantive count of the
> Indictment specifies [sic] narrow time period or specific date
> on which the criminal acts occurred and the controlled
> substance in issue.
>
> As set forth above, the discovery production eliminates the
> need for a bill of particulars. Torres, 901 F.2d at 234;
> Payden, 613 F. Supp. at 817. Many of the defendant's

requests ask for details as to "how" the defendant committed a certain act (e.g. "State how it is claimed that the controlled substances were dispensed and distributed to any individual - request zzz["]). Such detailed disclosure of the government's evidence is not the function of a bill of particulars. Accordingly, for all of the foregoing reasons, defendant's requests for a bill of particulars should be denied.

Dkt. #53, pp.16-17.


It has become axiomatic that the function of a bill of particulars is to apprise a defendant of the essential facts of the crime for which he has been charged. *United States v. Salazar,* 485 F.2d 1272, 1277-78 (2d Cir. 1973); *cert. denied*, 415 U.S. 985 (1974); *Wong Tai v. United States*, 273 U.S. 77 (1927). The charges in the Indictment, along with the discovery materials provided by the government, clearly inform the defendant of the essential facts of the crimes charged. As a result, the defendant is not entitled to, nor is he in need of, the "particulars" being sought for that purpose, and his request is therefore denied.

A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.) (mem.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989); *see also United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (citing *United States v. Burgin*, 621 F.2d 1352, 1358-59 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980)); *see also [United States v.] Bortnovsky*, 820 F.2d [572] at 574 [(2d Cir. 1987)]. "Acquisition of evidentiary detail is not the function of the bill of particulars." *Hemphill*

*v. United States*, 392 F.2d 45, 49 (8ᵗʰ Cir.), *cert. denied*, 393
U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968).

*United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *see also United States v.*

*Chen*, 378 F.3d 151, 163 (2d Cir.), *cert. denied*, 543 U.S. 994 (2004); *United States v.*

*Porter*, No. 06-1957, 2007 WL 4103679 (2d Cir. Nov. 19, 2007), *cert. denied*, 128 S.Ct.

1690 (2008).


**Disclosure of Informant Information**

The defendant requests the disclosure of the identity of all informants

possessing information which may be material to defendant's alleged guilt or

innocence, the identity of all informants who were present at any of the events

described in the Indictment and all government reports containing any information

received from an informant.  Dkt. #41, pp.24-31.  In its response, the government states

that such disclosure is unwarranted at this time.  Dkt. #53, pp.17-19.  In its response

the government acknowledges the existence of confidential, cooperating individuals in

this case insofar as the Criminal Complaint referenced the use of confidential sources.

Moreover, the government states that it has made available the recordings of the office

visits and medical files involving the confidential sources and undercover officers.

According to the government, disclosure of the identity of these sources/witnesses at

this time is not warranted.


In order to be entitled to the requested information, the defendant must

sufficiently state a basis for requiring the disclosure of this information or that the

testimony of the informant would be of even marginal value to the defendant's case. Moreover, the Court notes that the holding of the Court of Appeals for the Second Circuit in *United States v. Saa*, 859 F.2d 1067 (2d Cir. 1988), *cert. denied*, 489 U.S. 1089 (1989), is instructive:

> The leading Supreme Court case on this question, *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), holds that
>
> > [w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the [informant's] privilege must give way.
>
> 353 U.S. at 60-61, 77 S.Ct. at 628. The Court explained that "no fixed rule with respect to disclosure is justifiable." *Id.* at 62, 77 S.Ct. at 628. What is required is "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* Whether non-disclosure is erroneous "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id. See Rugendorf v. United States*, 376 U.S. 528, 534-35, 84 S.Ct. 825, 829, 11 L.Ed.2d 887 (1964); *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983); *United States v. Ortega*, 471 F.2d 1350, 1359 (2d Cir. 1972), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973).
>
> The defendant is generally able to establish a right to disclosure "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984); *United States v. Roberts*, 388 F.2d 646, 648-49 (2d Cir. 1968); *see United States v. Price*, 783 F.2d 1132 (4th Cir. 1986); *United States v. Barnes*, 486 F.2d 776 (8th Cir. 1973). In *Roberts*, the informant introduced an undercover agent to

the defendant and was present when the defendant and the agent negotiated and transacted two sales of heroin. The Court, noting that the informant was "present during all the significant events," 388 F.2d at 649, found that he was "obviously a crucial witness to the alleged narcotics transactions," *id.*, and therefore, his whereabouts should have been revealed to the defense if properly requested. But disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 870-81, 102 S.Ct. 3440, 3448, 73 L.Ed.2d 1193 (1982) (dictum); *United States v. Lilla*, 699 F.2d at 105. As this Court's recent opinion in *United States v. Jiminez*, 789 F.2d 167 (2d Cir. 1986) makes clear, it is not sufficient to show that the informant was a participant in and witness to the crime charged. In *Jiminez*, the informant was both participant and witness, but the district court's refusal to order disclosure of his identity was upheld on the ground that the defendant had failed to show that the testimony of the informant "would have been of even marginal value to the defendant's case. 789 F.2d at 170."

*Id.* at 1073; *see also United States v. Fields*, 113 F.3d 313, 324 (2d Cir.), *cert. denied*, 522 U.S. 976 (1997).

In support of his request, the defendant argues that he is entitled to the location and present whereabouts of any and all informants so that an investigation may be made into the credibility and background of the informants prior to trial. Dkt. #41, p.27. In addition to the revelation of the identity, location and present whereabouts of each informant, the defendant further asserts that he is entitled to pretrial access to the prosecution witnesses. *Id.* at pp.28-31. As a threshold matter, defendant Mehta recognizes that the general rule is that in non-capital cases the accused has no constitutional right to require the production of the names and addresses of prospective

witnesses.  However, the defendant maintains that this rule is "suffering from increasing erosion."  *Id*. at p.28.  Lastly, the defendant offers the standard, boilerplate reasoning offered in nearly every case in support of his request, *i.e.*, "[t]he inherent unreliability of the testimony of an accomplice or government informant underscores the need for complete disclosure of information relating to credibility."  Dkt. #41, p.31.  Without more, the Court finds that the defendant has failed to sufficiently state a basis for requiring the disclosure of this information or that the testimony of the informant would be of even marginal value to the defendant's case.  Accordingly, defendant's request is denied without prejudice.

**Discovery**

As a threshold matter, the defendant acknowledges that the government has provided voluntary discovery.  Dkt. #41, p.31.  By this request, however, the defendant "moves to compel discovery of all items or information to which the Defendant is entitled."  *Id*.  Moreover, the defendant specifies the following ten separately lettered requests: (a) records, including reports and/or logs, relating to the arrest of all co-conspirators; (b) all records, including reports and/or logs, regarding radio transmissions from the officers at any search warrant or arrest scene regarding the investigation; (c) reports relating to the booking process; (d) reports and/or test results relating to determination of drug quantity or type of drug; (e) photographs taken relating to investigation; (f) documents and photographs seized on the day of any searches; (g) inspection of all items seized from the defendant on the day of his arrest;

(h) names and identities of expert witnesses, their qualifications, such of testimony, reports, results of tests, examinations or experiments; (i) any search warrant, arrest warrant, wiretap order and/or surveillance order applied for and/or issued or denied during investigation; (j) written notification pursuant to Rule 12(d) of the Federal Rules of Criminal Procedure of any evidence on which the government intends to rely that may be the subject of a motion to suppress and to which the defendant is entitled to discovery pursuant to Rule 16. *Id*. at pp.32-33.

In its response, the government states that it has provided the defendant with significant voluntary discovery and adds that the government's file "is open for inspection except as to identity of witnesses and witness statements." Dkt. #53, pp.6 and 21. Specifically, the government states,

> The discovery included copies of all the patient files seized during the execution of a search warrant in MEHTA'S office on January 27, 2011; copies of the patient files relating to the recorded office visits; copies of all prescriptions that were issued while Mehta was outside the United States; copies of the recorded office visits; a copy of the expert report; and reports of certain interviews conducted during the investigation. The government hereby advises counsel for the defendant that the government file, except for certain witness statements, is available for inspection. In addition, the defendant has received a copy of the search warrant application and affidavit which, in conjunction with the information in the Criminal Complaint (11-M-41), provides a detailed description of the government's evidence in this case.

Dkt. #53, pp.6-7. In response to the defendant's ten requests summarized above, the government indicated that all records relating to the arrest of co-conspirators, reports relating to the execution of the search warrant and arrest warrants will be disclosed in

accordance with the Jencks Act.  The government indicated that copies of any booking

reports will be provided, if required, in accordance with the Jencks Act.  The

government has stated that there has been no testing relative to drug quantity or type.

Copies of all photographs taken during the investigation are available for inspection, as

are items seized during the execution of the search warrant.  Copies of medical records

seized have been provided to the defendant and computer equipment seized during the

execution of the search warrant has been returned to the defendant.  With respect to

the government's expert witness, Dr. Theodore Parran, his report and curriculum vitae

were attached to the Criminal Complaint.  The government further stated that the

search warrant and supporting documentation was provided to the defendant.  Finally,

the government advises that at the trial it "intends to introduce certain medical records

seized from the defendant's medical office.  Copies of all such records have been

provided.  The government also intends to introduce consensual recordings of the

defendant with the confidential sources/undercover officers. Copies of those recordings

have been provided to the defense." Dkt. #53, p.22.  In addition to the foregoing, the

defendant also seeks the following documents and information.


**Statements of Defendant**

Under the heading, Statements of Defendant, defendant Mehta seeks all

oral, written or recorded statements of the defendant, as well as books, papers,

documents, photographs or tangible objects obtained from or belonging to the

defendant, search warrants, recordings, expert witness information, and prior similar

acts or other crimes.  Dkt. #41, pp.34-37.  In its response, the government reiterates

that copies of documents and physical evidence the government intends to introduce at trial are available for inspection.  Copies of all photographs, drawings and recordings are available or have been provided.  Copies of the search warrant, application and supporting documentation and inventory have been provided to the defense.   The government states that copies of all recordings have been provided to the defense.  Finally, the government states that expert witness information had been provided and that Federal Rule of Evidence 404(b) evidence, if any, will be addressed in the government's pretrial memorandum.

### Defendant's Prior Record

In response to the defendant's request for a copy of his prior criminal record, the government acknowledges that the defendant has no prior criminal record in the United States.

### Documents and Tangible Objects

In its response to the defendant's request seeking the disclosure of any tangible items the government intends to use as evidence in chief, obtained from the defendant, material to the preparation of a defense and all recordings of conversations pertaining to the facts alleged in the indictment, the government states that it has "supplied and/or made available all the documents it intends to introduce at trial."  Dkt. #53, p.24.

**Search and Seizure**

As discussed above, copies of the search warrant, application, supporting documentation and inventory have been provided to the defendant. *Id*.

**Identification**

The government advises that there were no formal or informal identification procedures used in this case. Indeed, all witnesses who will identify the defendant will do so based on their interactions and familiarity with the defendant. *Id*.

**Reports of Examinations and Tests**

As the government has previously advised, the report generated by the government's expert, Dr. Theodore Parran and Parran's *curriculum vitae* were attached to the Criminal Complaint.

***Jencks* Material**

Because the defendant has made a separate request for witness statements, the Court will address his requests below.

Accordingly, based on the representations made by counsel for the government and as set forth above, defendant Mehta's motion for discovery is denied.

***Brady* Material**

Within his broad request labeled "*Brady* Material," the defendant seeks the immediate disclosure of all exculpatory and/or impeaching material in the government's possession, custody and control. Specifically, the defendant seeks the following five categories, including twenty-one sub-categories, of documents, information and/or material tending to exonerate Mehta, evidence tending to impeach the credibility of any prospective government witness, written and oral statements made by any person, including co-defendants, with knowledge of the events charged in the Indictment, written or oral statements made by persons and/or co-defendants the government believes has information helpful to the defense, and name and address and the written or oral statements of any witness or co-defendant whom the government does not intend to call as a witness. Dkt. #41, pp.41-56. Thus, the Court will treat this request principally as one for *Brady* and *Giglio* material. In its response the government states,

> [t]he Government acknowledges its affirmative and continuing duty to provide the defendant with exculpatory evidence, under the authority of Brady v. Maryland, 373 U.S. 83 (1963), as well as evidence that the defense might use to impeach Government's witnesses at trial. . . . In the instant case, the Government agrees to provide impeachment Brady material, i.e., promises of leniency or immunity agreements with Government witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such, criminal arrest records of all prosecution witnesses, immoral, vicious or criminal acts committed by witnesses, prior inconsistent statements, and payments to witnesses or family members thereof, and all other promises or considerations given by Government personnel to Government witnesses or family members thereof, in accordance with the schedule set by the District

Court prior to trial and no later than when the Government
produces and delivers the <u>Jencks</u> Act material in this case.

Dkt. #53, pp.26 and 28 (internal citations omitted).


"[A]s a general rule, *Brady* and its progeny do not require immediate
disclosure of all exculpatory and impeachment material upon request by a defendant."
*United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). The prosecution is obligated
to disclose and turn over *Brady* material to the defense "in time for its effective use." *Id.*
at 144. With respect to impeachment material that does not rise to the level of being
*Brady* material, such as *Jencks* statements, the prosecution is not required to disclose
and turn over such statements until after the witness has completed his/her direct
testimony. *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2; *In re United States*, 834 F.2d
283 (2d Cir. 1987). However, if the government has adopted a policy of turning such
materials over to the defendant prior to trial, the government shall comply with that
policy; or in the alternative, produce such materials in accordance with the scheduling
order to be issued by the trial judge.


Based on the representations made by counsel for the government as to
its obligations under *Brady* and *Giglio,* the defendant's request is denied, but the
government is hereby directed to comply with the Second Circuit Court of Appeals'
holding in *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) and *United States v.
Rodriguez*, 496 F.3d 221 (2d Cir. 2007) by making timely disclosure of those materials
to the defendant.

**Rule 404(b), 608 and 609 Material**

By this request, the defendant "respectfully requests that the government notify him of any evidence that the government contends would be admissible under Rule 404(b) of the Federal Rules of Evidence." Dkt. #41, p.57. In addition, the defendant also requests pretrial disclosure of any other evidence the government intends to use to impeach the defendant's credibility should he choose to testify. The defendant also requests a pre-trial hearing to determine the admissibility of such evidence. *Id*. Moreover, the defendant requests discovery of all information pertaining to the character and/or conduct that may be used to impeach any witness the government intends to call. *Id*. In its response, the government states that,

> The government will advise the defendant of its intent to use "other acts" evidence pursuant to Fed.R.Evid. 404(b), or its intent to offer evidence pursuant to Fed.R.Evid. 608(b) and 609, at the time it is ordered to do so by the district court or consistent with its disclosure of Jencks material. It is submitted that any hearings on the admissibility of such evidence is a matter for the District Court at the time of trial.

Dkt. #53, p.29.

Rule 404(b) only requires that "the prosecution. . . provide reasonable notice in advance of trial. . . of the *general* nature of any such evidence it intends to introduce at trial." (Emphasis added). Insofar as the government has indicated that it intends to comply with any pretrial disclosure order entered by the trial judge and further, that it understands its disclosure obligations, defendant's request is denied as moot. The Court notes that the issue of admissibility of such evidence pursuant to

Rules 403 and 404(b) of the Federal Rules of Evidence is best left to the determination of the trial judge at the time of trial. Accordingly, the defendant's request for an Order with respect to admissibility of such evidence is denied.

With respect to the defendant's request pursuant to Rule 608, Rule 608 does not contain the same pretrial notice as set forth in Rule 404(b). Therefore, there is no requirement on the part of the government to make any disclosure of evidence, or its intent to use evidence at the trial pursuant to Rule 608 at this time. Therefore, defendant's request in this regard is denied. With respect to the defendant's request pursuant to Rule 609, based on the representations made by counsel for the government, defendant's request is denied as moot. The government is hereby reminded that should the government learn of evidence of other crimes, wrongs and acts it intends to offer pursuant to Federal Rules of Evidence Rules 608 and 609 (impeachment material) during the trial, the government is hereby directed to provide such information consistent with its disclosure of *Jencks* Act material and the disclosure requirements set by the trial judge in advance of the trial.

**Witness Statements**

By this request, the defendant seeks the early disclosure of witness statements pursuant to Title 18, United States Code, Section 3500. Dkt. #41, pp.58-59. Specifically, the defendant requests the immediate disclosure of the witness statements, "but in no event not later than eight weeks prior to the date of the trial." *Id*.

With respect to defendant Mehta's request for *Jencks* Act material, the government states that it recognizes its obligation to provide defendant with all previous statements of a government witness relating to the subject matter of the witness's testimony, but that such statements need only be disclosed after a witness is called by the United States to testify on direct examination. Dkt. #53, p.25. Accordingly, the government agreed to provide *Jencks* Act information two weeks prior to trial or as otherwise directed by the trial court.

As noted above, with respect to impeachment material that does not rise to the level of being *Brady* material, such as *Jencks* statements, the prosecution is not required to disclose and turn over such statements until after the witness has completed his direct testimony. *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2; *In re United States*, 834 F.2d 283 (2d Cir. 1987). However, if the government has adopted a policy of turning such materials over to the defendant prior to trial, the government shall comply with that policy; or in the alternative, produce such materials in accordance with the scheduling order to be issued by the trial judge.

Based on the representations made by counsel for the government, that it will comply with the trial judge's pretrial order concerning the disclosure of witnesses' statements, the defendant's request is denied. Notwithstanding the foregoing, the government is hereby directed to comply with the Second Circuit Court of Appeals' holding in *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) and *United States v.*

*Rodriguez*, 496 F.3d 221 (2d Cir. 2007) by making timely disclosure of those materials to the defendant.

**Preservation of Rough Notes and Other Evidence**

By this request, the defendant seeks an Order from this Court requiring all government agents and officers who participated in this investigation to retain and preserve all rough or handwritten notes taken as part of their investigation, regardless of whether or not the contents of the notes are incorporated in official records.  Dkt. #41, p.59.  In addition, the defendant also requests an Order from this Court directing the government to preserve and protect from destruction, alteration, mutilation or dilution any and all evidence acquired in their investigation of defendant.  *Id.*  In its response, the government states that it "has directed its agent [sic] to preserve all rough notes generated during the investigation. The government will provide those items prior to trial in accord with the Jencks Act and the directives of the trial court."  Dkt. #53, p.29.

Although perhaps unnecessary, based on the representations made by counsel for the government concerning its acknowledgment of its obligation and its agreement to instruct the agents to retain and preserve rough notes, the express admonition of the Court of Appeals for the Second Circuit bears repeating in addressing this particular request of the defendant wherein the Court stated:

> [W]e will look with an exceedingly jaundiced eye upon future efforts to justify non-production of a Rule 16 or Jencks Act "statement" by reference to "departmental policy" or "established practice" or anything of the like.  There simply is no longer any excuse for official ignorance regarding the

> mandate of the law.  Where, as here, destruction is
> deliberate, sanctions will normally follow, irrespective of the
> perpetrator's motivation, unless the government can bear
> the heavy burden of demonstrating that no prejudice
> resulted to the defendant. . . .  We emphatically second the
> district court's observation that any resulting costs in the
> form of added shelf space will be more than
> counterbalanced both by gains in the fairness of trials and
> also by the shielding of sound prosecutions from
> unnecessary obstacles to a conviction.

*United States v. Buffalino*, 576 F.2d 446, 449-50, (2d Cir.), *cert. denied*, 439 U.S. 928

(1978); *see also United States v. Grammatikos*, 633 F.2d 1013, 1019-20 (2d Cir. 1980);

*United States v. Miranda*, 526 F.2d 1319 (2d Cir. 1975), *cert. denied*, 429 U.S. 821

(1976).  Accordingly, the government is hereby directed to maintain and preserve all

materials that are known by the government to exist, that constitute potential *Jencks* Act

material in this case.


**Production of Grand Jury Transcripts**

By this request, the defendant seeks an Order pursuant to Rule

6(e)(3)(C)(I) of the Federal Rules of Criminal Procedure for the disclosure of the

transcripts of the testimony and all exhibits presented to the Grand Jury that indicted

the defendant.  Dkt. #41, p.60.  In support of his request, the defendant argues that he,

> is the subject of a bare bones Indictment.  Dr. Mehta has
> limited information as to who the witnesses against him will
> be.  The particularized need justifying disclosure is so that
> Dr. Mehta is informed of what evidence actually exists
> against him, and so he can intelligently make a decision as
> to his course of action.

*Id*.  In its response the government asserts that contrary to the defendant's request, the Indictment in this case is very detailed.  In addition, the government maintains that the defendant has failed to meet the particularized need test for the disclosure of grand jury transcripts.  Dkt. #53, p.30.

It is a long-established rule that "[t]he burden. . . is on the defense to show that 'a particularized need' exists for the minutes [of the grand jury] which outweighs the policy of secrecy."  *Pittsburgh Plate Glass Co v. United States*, 360 U.S. 395, 400 (1959).  The assertion of the defendant as to his "particularized need" is legally insufficient to require disclosure of the grand jury proceedings as requested by him.  It is pointed out that transcripts of grand jury testimony of witnesses called by the government to testify at trial must be made available to the defendant pursuant to and in accordance with the provision of 18 U.S.C. § 3500.

It is also pointed out that:

> [A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.

*United States v. Calandra*, 414 U.S. 338, 345 (1978).  Furthermore,

> An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.  The Fifth Amendment requires nothing more.

*Costello v. United States*, 350 U.S. 359, 363 (1956).  Therefore, defendant's request for disclosure of the grand jury proceedings is denied.

**Voir Dire of Expert Witnesses**

By this request, the defendant seeks an Order permitting his counsel to conduct *voir dire* of any proposed government expert witness at trial outside the presence of the jury. Dkt. #41, pp.60-61. In support of his request, the defendant asserts that,

> [i]n the present case, complete discovery has not been received from the government, including the names of and summaries by the government's proposed experts, if any, pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Therefore, this motion is made so that if the government subsequently identifies any experts (such as to identify questioned substances), defense counsel may *voir dire* the expert outside the presence of the jury.

*Id*. at p.61.

In its response, the government states, "the government intends to call an expert witness, Dr. Theodore Parran, to testify as to the encounters between the defendant and the persons to whom he prescribed controlled substances. Whether the defendant is entitled to voir dire the expert witness outside the presence of the jury, is a call best left to the trial judge following submissions of all trial related proceedings." Dkt. #53, p.31. Accordingly, defendant's motion concerning *voir dire* of an expert witness outside the presence of the jury is premature and is denied as moot.

**Audibility Hearing**

Defendant has requested an audibility hearing "to determine whether any recordings that the government seeks to introduce at trial are audible." Dkt. #41, p.62.

The defendant states that the government had identified some recordings it may introduce at trial. Further, defendant states that "counsel has reviewed the tapes previously provided. We believe that there are substantial portions of the tapes, where both audio and video are unintelligible and where substantial portions of the video cannot be observed." *Id*. Notably, the defendant does not specifically identify any audio or video recordings he believes to be unintelligible. In its response, the government states that it has produced video and audio recordings of encounters between the defendant and undercover officers/cooperating witnesses. Dkt. #53, p.31. Moreover, the government states that the possibility of an audibility hearing should not be addressed unless and until the defendant identifies portions of the recordings that he feels are inaudible. *Id*. In a subsequently filed memorandum, defendant Mehta reiterates that "the tapes, both video and audio, cannot be observed properly and there are significant areas where the tapes cannot be heard." Dkt. #50, p.11.

It would appear that neither counsel for the defendant nor counsel for the government have advised the Court that after a review of the audio recordings and video recordings that may be used at trial by the government, there are any actual audibility problems or issues with respect to specific recordings. Therefore, the defendant's motion in this regard is denied without prejudice to the right to reapply for such relief after the recordings have been reviewed and it is determined that there is an audibility issue that needs to be resolved by this Court. As part of this process, counsel for the government is hereby directed to identify those recordings that the government plans on using at the trial of the defendant and to have transcripts of those tape or CD

recordings prepared. Once such transcripts have been prepared, counsel for the government shall supply copies of the designated tapes or CDs and respective transcripts to counsel for the defendant. Counsel for the defendant is hereby directed to review the aforesaid tapes or CDs and transcripts after receipt of same, and upon completion of such review, make known to counsel for the government those portions of the aforesaid tapes or CDs and transcripts that counsel for the defendant claims are inaudible or, in the alternative, inaccurately transcribed. Thereafter, counsel for the government and the defendant are directed to confer for the purpose of resolving any disputes that may exist as to audibility of the tapes or CDs in question and the correctness of the transcripts of such tapes or CDs. Should the attorneys be unable to resolve any such disputes that may exist, counsel for the defendant may file a motion for an audibility hearing, which motion must be filed and served within ten days after the last conference between the attorneys seeking to resolve such issues.

**Motion for Leave to Make Other Motions**

By this request, the defendant, "respectfully moves the Court for an order allowing him to make further and additional motions which may be necessitated by due process of law, by the Court's ruling on the relief sought herein, by additional discovery provided by the government or investigation made by the defense, and/or by any information provided by the government in response to the defendant's demands." Dkt. #41, p.89. Subject to the limitations contained in the aforesaid quotation, the defendant's request to make further and additional motions that may be necessary is granted.

**Government's Request for Reciprocal Discovery**

In addition to the relief requested by the defendant, the government has made a request for reciprocal discovery. Dkt. #53, pp.53-54. The government has requested that the defendant permit it to inspect and copy all books, papers, documents, photographs and other tangible objects which the defendant intends to introduce as evidence-in-chief at the trial. In addition, the government seeks to inspect all reports of physical or mental examinations and of scientific tests or experiments, within the possession or control of the defendant along with written summaries of expert witness testimony that the defendant intends to use at trial. Since the defendant has moved pursuant to Rule 16(a)(1) of the Federal Rules of Criminal Procedure for similar materials and information, the government is entitled to this information pursuant to Rule 16(b)(1) and its request is granted.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

DATED:      Buffalo, New York
               May 3, 2013

                                  *s/ H. Kenneth Schroeder, Jr.*
                                  **H. KENNETH SCHROEDER, JR.**
                                  **United States Magistrate Judge**